IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CONCEPCION ORQUIOLA,            :
                                :
        Plaintiff,               :
                                :
    v.                           :    CIVIL ACTION NO.
                                :    1:05-CV-0783-JOF
NATIONAL CITY MORTGAGE CO.,     :
                                :
        Defendant.               :

## OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment [36-1], the Report and Recommendation of Magistrate Judge Janet F. King [67-1], and Plaintiff's objections thereto [69-1].

**I.   Procedural History and Facts**

Plaintiff, Concepcion Orquiola, filed suit against Defendant, National City Mortgage Co., on March 25, 2005, alleging that Defendant subjected her to tangible employment action sexual harassment, a sexually hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Plaintiff also asserts state law claims of "negligent and reckless failure to provide Plaintiff with a safe working environment," negligent hiring, retention, and supervision, battery, invasion of privacy, and

AO 72A
(Rev.8/82)

ratification of wrongful conduct.  After discovery, Defendant filed the instant motion for summary judgment.

Magistrate Judge King issued a Report and Recommendation in which she recommended that the court grant Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment and state law claims, but deny the motion on Plaintiff's tangible employment action sexual harassment and retaliation claims.  Defendant did not file any objections to the Report and Recommendation.  Plaintiff filed an objection to the Magistrate Judge's recommendation that Plaintiff's state law claims be dismissed.  Therefore, the court's recitation of facts and analysis will focus only on the state law claims.

Plaintiff began working for Defendant on August 11, 2003.  In October 2003, Plaintiff took a business trip with her supervisor, Stephen Buonanno.  On the trip Buonanno asked her several personal questions about her marriage and told her that he believed his wife was having an affair.  He also attempted to hold her hand and informed her he had a crush on her.  At a lunch in early November 2003, Buonanno again discussed problems in his family and attempted to kiss Plaintiff on the cheek.  He then stated that he wanted to have sex with her. Plaintiff testified that Buonanno did not engage in any further inappropriate conduct toward her.

Beginning in January 2004, however, Plaintiff believed that Buonanno started acting "cold" toward her.  He demoted her from Acting Branch/Operations Manager and Regional Underwriting Manager to Lead Underwriting Manager with a reduction in her salary and loss

of bonus. In early February 2004, Buonanno gave Plaintiff a negative performance evaluation. When she went to his office to complain, Buonanno told her that if she "kept quiet, he will pay me up to one month and start looking for a new job." The stress of this situation caused Plaintiff's health to deteriorate, and she took disability leave from February 12 to February 20. While out on leave – on February 16, 2004 – Plaintiff for the first time took her complaints about Buonanno to Defendant's Human Resources Department.

Plaintiff returned to work on February 23 and February 24, but then went out on long-term disability leave. While she was out on leave, the Human Resources Department learned that she had given her confidential user identification and password to a subordinate in violation of company policy. Defendant suspended Plaintiff's computer access for the remainder of her leave. Defendant also sent Plaintiff's personal belongings from her office to her home and assigned her office and telephone extension to another employee. While Plaintiff was out on leave, Defendant conducted an investigation into Plaintiff's complaints about Buonanno.

On May 12, 2004, Plaintiff faxed to Defendant her doctor's release showing she was able to return to work. She called Defendant's office on that day and the next to ask about her return but did not receive any calls back. On May 17, 2004, Plaintiff e-mailed Defendant and asked that someone send to her husband's fax machine her separation notice. She also informed Defendant that her husband would return her laptop computer. In response to this e-mail, Defendant wrote Plaintiff and informed her that her employment had been terminated

3

effective May 19, 2004. Several weeks later, Defendant also informed Plaintiff that it had not been able to substantiate Plaintiff's allegations in the harassment investigation because there were no witnesses and Buonanno denied the conduct. Therefore, Defendant stated, it could not conclude that harassment had occurred. In the same letter, Defendant forwarded to Plaintiff a bonus check for December 2003.

## II.     State Law Claims

The specific nature of Plaintiff's state law claims is difficult to discern based on the parties' briefings. Plaintiff's complaint raises state law claims of (1) "negligent and reckless failure to provide Plaintiff with a safe working environment," (2) negligent hiring, retention, and supervision, and (3) ratification of wrongful conduct. (Although Plaintiff originally brought claims of battery and invasion of privacy against Buonanno, Plaintiff voluntarily dismissed all claims against Buonanno on September 14, 2005.).

In its motion, Defendant moved for summary judgment on battery, invasion of privacy, negligent hiring and retention, and intentional/negligent infliction of emotional distress. Plaintiff responded arguing that Defendant is liable for (1) Buonanno's sexual harassment of Plaintiff, (2) negligent retention and supervision because Defendant was on notice of Buonanno's propensity for sexual harassment, and (3) failure to provide Plaintiff with a safe working environment.

Because Plaintiff did not respond to Defendant's motion for summary judgment as to her battery and invasion of privacy claims, the court deems them abandoned and grants Defendant's motion for summary judgment on those grounds.

Defendant's motion with respect to intentional infliction is more puzzling. In her response to Defendant's motion for summary judgment, Plaintiff repeatedly refers to the fact that the standards for "sexual harassment" under Title VII are different than those in Georgia law. The court must emphasize, however, that there exists no cause of action in Georgia for "sexual harassment." Georgia law does provide a cause of action for intentional infliction of emotional distress. Employees may allege harassment claims through this cause of action. However (and despite the fact that Defendant moved for summary judgment on this claim), Plaintiff's complaint contains no cause of action for intentional infliction of emotional distress.

Therefore, eliminating the claims not raised in her complaint or abandoned for failure to respond to Defendant's motion for summary judgment, Plaintiff's remaining state law claims are: (1) "negligent and reckless failure to provide Plaintiff with a safe working environment," and (2) negligent hiring, retention, and supervision, and (3) ratification of wrongful conduct.

In her Report and Recommendation, Magistrate Judge King found that Plaintiff's claim for failure to provide a safe working environment arose out of O.C.G.A. § 34-2-10(a). Magistrate Judge King noted, however, that Plaintiff had provided no citation to any case law

5

which permitted such a claim to be raised on facts such as were present here and recommended summary judgment as to this claim. Plaintiff has not filed any objection to this recommendation and the court adopts it.

With respect to Plaintiff's negligent retention and supervision claim, Magistrate Judge King found that Defendant did not have any reason to know of Buonanno's alleged propensity for sexual harassment. The Magistrate Judge noted only one other time this issue arose – when Diane Crutcher, a former employee, told one of Defendant's Human Resources employees that a third employee had "hinted about sexual harassment" involving Buonanno. The third employee, herself, had never made a complaint. Defendant investigated the incident and could not determine from Crutcher's second-hand reporting whether the third employee was complaining about sexual harassment or a consensual sexual relationship. The Magistrate Judge determined that the information relayed by Crutcher was not sufficient to put Defendant on notice that Buonanno had a propensity for sexual harassment. Plaintiff does not object to this specific finding by the Magistrate Judge and the court adopts it.

Rather than objecting to the Magistrate Judge's determination about the Crutcher matter, in her objections to the Report and Recommendation, Plaintiff proffers a new theory for why Defendant should be liable under negligent retention: That Defendant had reason to know of Buonanno's propensity for retaliation. Plaintiff has not previously raised this species of a negligent retention claim, and the court rejects Plaintiff's objections on that basis alone.

Additionally, the court notes that it is not clear that a negligent retention claim can survive on its own without an underlying state law tort. Plaintiff attempts to address this issue in her objections when she states that "[r]etaliatory conduct is a type of harm prohibited under Georgia law. *Trimble v. Circuit City Stores, Inc.*, 228 Ga. App. 498 (1996)." *See* Objections, at 2. *Trimble*, however, does not recognize a tort under Georgia law for retaliation. Rather, *Trimble* holds that "an employer's retaliation against an employee for testifying against the employer could provide the basis for an employee's intentional infliction of emotional distress claim." *Trimble*, 220 Ga. App. at 500 (citing *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703 (1991)). This is not simply a matter of semantics. Like there is no distinct tort in Georgia law for "sexual harassment," there is no separate tort under Georgia law for "retaliation." Georgia courts have described negligent retention as a "derivative" claim thus requiring an underlying tort of which Plaintiff has none in state law. *See*, *e.g.*, *MARTA v. Mosley*, 280 Ga. App. 486 (2006) ("claim for negligent retention is necessarily derivative and can only survive summary judgment to the extent that the underlying substantive claims survive the same"); *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (1999) (same).

Furthermore, even if the court accepts that Plaintiff's new claim of propensity for retaliation and accepts that a negligent retention claim can exist without an underlying state law tort, Plaintiff, herself, admits that Defendant would not have been put on notice for Buonanno's propensity to retaliate until at the earliest February 16, 2004, when Plaintiff

complained to Defendant's Human Resources Department about Buonanno's conduct.[1]  Thus, Plaintiff's January 2004 demotion and the accompanying denial of her December 2003 bonus, as well as the negative performance evaluation she received on February 9, 2004, cannot form the basis of her negligent supervision claim.

Obviously, no actions taken by Defendant, itself, can form the basis of a negligent supervision claim.  Thus, Plaintiff's complaints about cutting off her access to the computer system, the packing of her personal belongings, and the reassignment of her desk and telephone number cannot support her negligent supervision claim.  Likewise, Plaintiff's termination does not create liability against Defendant because Buonanno did not terminate Plaintiff; Defendant did.

Finally, the state of the "ratification theory" in Georgia law is unclear in the employer-employee context.  *See generally Travis Pruitt & Associates, P.C. v. Hooper*, 277 Ga. App. 1 (2005).  Judge Phipp's concurring opinion in that case thoroughly discusses the previous Georgia cases that have allowed a theory of ratification.  The court need not determine how far Georgia courts would take a ratification case, however, because unlike *Trimble*, *Mears*,

---

[1] In her objections, Plaintiff hints that Defendant was aware of Buonanno's retaliatory conduct when he presented his draft performance evaluation to the Human Resources Department.  Human Resources informed Buonanno that it disagreed with some of the factual statements made in the evaluation.  But at this point, Human Resources had no idea that Plaintiff believed Buonanno had harassed her.  Thus, the mere fact Human Resources disagreed with Buonanno's evaluation could not have put Defendant on notice of any wrongful conduct by Buonanno.

*Wiley*, and *Newsome*, Plaintiff, here has not alleged any acts that Buonanno took that Defendant ratified after it became aware of Buonanno's alleged conduct. Ratification must be of some act that Buonanno took. Defendant specifically did not ratify the negative performance evaluation given by Buonanno because at the time of Plaintiff's departure from the company, it tendered to Plaintiff the bonus to which she contended she was entitled. Defendant, itself, made the decision to terminate Plaintiff (and as such, is potentially liable to Plaintiff on her retaliation claim), but not under ratification because Buonanno did not make that decision. Thus, Plaintiff has proffered no acts of retaliation that Buonanno took after February 16, 2004, that Defendant then ratified.

For the foregoing reasons, the court rejects Plaintiff's objections to the Magistrate Judge's Report and Recommendation dismissing her state law claims.

### III. Conclusion

The court ADOPTS the Report and Recommendation of Magistrate Judge Janet F. King [67-1] as the ORDER of this court. The court GRANTS IN PART AND DENIES IN PART Defendant's motion for summary judgment [36-1].

**IT IS SO ORDERED** this 16th day of January 2007.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)